IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

EVEREST WEALTH MANAGEMENT, INC.
100 West Road
Suite 300
Towson, Maryland 21204,

  Plaintiff

  v.

JOHN DOE and DOE, INC. a.k.a.
Mike@LongTermReturns.com,

  Defendants

Case No. 1:13-CV-1714

## VERIFIED COMPLAINT

Plaintiff, Everest Wealth Management, Inc. ("Everest"), by its undersigned counsel, brings this Complaint against the Defendants, John Doe and Doe, Inc. ("Does I and II") a.k.a. Mike@LongTermReturns.com, and pleads and alleges as follows:

### I. THE PARTIES

1. Everest is a Florida corporation, qualified to do business in Maryland, with a principle place of business at 100 West Road, Suite 300, Towson, Maryland 21204. Everest is engaged in the business of financial planning, money management and sale of financial products, such as annuities.

2. Does I and II are responsible for publishing defamatory statements and content about Everest. These defamatory statements and content are published on the Internet and can be read at http://www.longtermreturns.com/2012/09/guaranteed-7-percent-returns.html (the "Blog"). Does I and II have concealed their identities by registering the domain name LongTermReturns.com (the "Website") through an Internet

anonymity company, Whois Privacy Protection Services, Inc., a Nevada corporation with a principle place of business at 5808 Lake Washington Boulevard, Suite 300, Kirkland, Washington 98033. To contact the owners of the Website, the Nevada corporation directs that all correspondence be delivered to an address in Bellevue, Washington. On information and belief, Does I and II are not citizens of Florida or Maryland.

## II.   JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy, exclusive of interests and costs, exceeds $75,000.

4. Personal jurisdiction in this District over Does I and II is proper pursuant to Maryland's Courts & Judicial Proceedings Article § 6-103 and the Due Process Clause of the Fourteenth Amendment because Defendants have committed torts in the State of Maryland by causing defamatory writings to be published in, and read by, residents of Maryland.

5. Venue in this District is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District, in that Defendants' false and defamatory publications were published and have caused injury within this District.

## III.   FACTS

6. Everest is a wealth management and financial advisory firm that manages approximately $100 Million; its clients are located in approximately twenty states, including Maryland.

7. Everest recently learned that on or about September 24, 2012, Does I and II published the Blog on the Website; Everest was clearly identified by name as the subject of the Blog. In doing so, Defendants provided a link to Everest's website, www.everestwm.com. The Blog, as published by Defendants, contains false and defamatory statements about Everest, including statements that accuse Everest of illegally operating in the United States and engaging in deceitful conduct. The Blog written by Defendants, as Internet Content Providers, states, in pertinent part:

> I've never heard of **Everest Wealth Management** before, but I can assure you that **neither they nor anybody else legally operating in the United States would or could guarantee 7% return**. No investment even remotely close to this number exists today in the United States. You could probably find something like it in other countries which are experiencing chronic high inflation so that nominal 7% is actually losing money to inflation there. Needless to say that's not much of a bargain and (hopefully) not what these guys are promising you. The only guaranteed investments in strict sense of the word are US Treasury notes and/or FDIC-insured accounts, which top out at around 3% return these days (3.5% if you want to get fancy and invest in EE savings bonds for 20 years -- which is actually a perfectly reasonable strategy considering the alternatives).
>
> It's not impossible that a balanced, diversified, low-cost stock/bond portfolio will deliver 7% returns going forward, but it's certainly not guaranteed and the ride will be quite volatile (and even then in my opinion it'd be prudent to expect 5-6% and not 7% for the next decade or two).
>
> **What these Everest Wealth Management guys and hundreds others like them do is dance around the words to make sure they convey the impression of that "guaranteed" 7% return without actually being pinned down to deliver it.** They know that there're plenty of individual investors who just want to hear that their investment will be safe and grow steadily. That's their target and they have silky smooth sales pitches to get them hooked. If they actually could guarantee steady 7% returns with no volatility they'd running [*sic*] a cream-of-the-crop

> hedge fund at high leverage instead of going on radio stations to push their wealth management services.
>
> So where did they get the 7% figure? Maybe they are talking about an annuity that pays out 7% of its principal which could be the case for people over certain age. The catch there is that the annuity gets to keep that principal after the individual passes so the actual ROI is nowhere close to 7%. Or maybe they are talking about some backtested investment strategy that delivered 7% historically. The catch here is that you can't go back in time and invest in it. Being a great investment in the past has zero meaning going forward. In fact, it often means the investment is in a bubble and will have lousy/negative returns in the future. Whatever the case, **what they are selling you is empty promises**. I'll leave it at that.

(emphasis added.)

8. The statements identified above in bold are false, harmful to Everest's business, and despicable. They convey to the reader that Everest operates illegally, lies about its products and performance and is generally deceitful. To the contrary, Everest does not operate illegally in the United States or elsewhere, and it does not engage in deceitful conduct or lie to its clients and prospective clients. To say so in a public forum, available to any person who searches the Internet for Everest, causes Everest to lose customers and potential customers and causes damage to Everest's reputation. Everest maintains all licenses and registrations necessary to conduct its business, and invests significant time, effort, and financial resources to advertise and promote its products and services and to establish a reputation utilizing a business model based on honesty, integrity, and customer satisfaction.

9. Upon information, Does I and II are not familiar with the conduct by Everest of its business, and has made defamatory statements relating to Everest's business nevertheless.

10. On June 6, 2013, Everest, through counsel, wrote to Defendants at Mike@LongTermReturns.com and demanded that the false and defamatory statements be removed. Defendants did not respond and the Blog remains on the Internet.

11. Defendants' ongoing publication of defamatory statements about Everest falsely impugn Everest's character, honesty and integrity, and accuse Everest of dishonest conduct, irreparably harming its reputation and business prospects.

12. Defendants' statements have, and will continue, to cause harm to Everest.

13. On information and belief, as a direct result of Defendants' defamatory statements published on the Website, Everest has lost business revenues, potential new business relationships, and potential new customers.

## COUNT I: DEFAMATION PER SE
### (Does I and II)

14. Paragraphs 1 through 13 set forth above are realleged and incorporated herein by reference.

15. Does I and II published, and continue to publish, false statements that Everest is operating illegally in the United States and engaging in deceitful conduct. By their very nature, these statements cause injury to Everest's professional reputation, including by accusing Everest of illegal conduct and impugning Everest's fitness to engage in its profession.

16. The injurious nature of these statements are self-evident and have far reaching reputational and economic consequences. Further, these statements tend to expose Everest to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, associating, or doing business with Everest.

17. Does I and II made these false and defamatory statements about Everest with knowledge of their falsity or in reckless disregard for their truth, or alternatively, Defendants published these false and defamatory statements negligently, and without knowledge of how Everest engages in its business.

18. The persons to whom Does I and II published their defamatory statements are persons who reasonably understand the publications to be defamatory and that they accuse Everest of unethical business dealings, fraudulent conduct, and possibly criminal violations.

19. As a direct and proximate result of Does I and II's defamatory publications, Everest has suffered, and continues to suffer, material and on-going harm to its reputation, as well as financial losses.

20. Unless Does I and II are restrained and enjoined, Defendants will continue to cause irreparable harm to Everest, thereby further damaging Everest's business reputation and activities.

21. Everest has been injured in an amount not yet ascertained due to the ongoing nature of Defendants' conduct, and Everest is entitled to monetary and equitable remedies.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests that judgment be entered against Defendant as follows:

1. That the Court issue a permanent injunction:

    (a) enjoining and restraining Defendants, their agents, representatives, servants, employees, attorneys, successors and assigns, and all others acting in concert or

participation with them, from disseminating, using, disclosing or publishing all false, misleading, disparaging, and/or defamatory words or comments regarding Everest Wealth Management, Inc., and its reputation, services, and commercial activities;

(b) ordering Defendants to remove from the Website the false, misleading, disparaging, and/or defamatory words and comments regarding Everest Wealth Management, Inc., and its reputation, and commercial services and activities;

(c) ordering Defendants to notify any and all Internet business directory providers and Internet search engines to terminate all associations between Defendants and Everest Wealth Management, Inc., and that all caches webpages maintained by any Internet search engine also be terminated.

2. Award to Everest Wealth Management, Inc. any and all compensatory damages it has sustained and punitive damages, in amounts to be determined at trial but not less than Two Hundred and Fifty Thousand Dollars ($250,000).

3. Order that Defendants be required to pay Everest Wealth Management, Inc.'s costs, expenses, and reasonable attorneys' fees in connection with this action.

4. Award such other and further relief as the Court deems just and proper.

Respectfully submitted,

June 13, 2013
/s/ Christopher J. Lyon
James B. Astrachan (Fed. Bar No. 3566)
Christopher J. Lyon (Fed. Bar No. 27443)
Daniel P. Doty (Fed. Bar No. 28247)
ASTRACHAN GUNST THOMAS P.C.
217 East Redwood Street
Suite 2100
Baltimore, Maryland 21202
410.783.3550 telephone
410.783.3530 facsimile
*Attorneys for Plaintiff*

I am the President of Everest Wealth Management, Inc., and I hereby verify, under the penalties of perjury, that the allegations set forth in the foregoing complaint are true and correct to the best of my knowledge.

EVEREST WEALTH MANAGEMENT, INC.

By: _____
Philip Rousseaux, President